and Rehabilitation. I request four minutes for rebuttal. There are three points that I would like to bring to the Court's attention. The judgment of the order that is from which you appeal is this document that appears on page 37 of what I call the appendix, this four-line order beginning, it is ordered that Plaintiff Alan Ardona be given access, etc. That's the document? Yes, Your Honor, that is the document. And how is this a preliminary injunction? Your Honor, the only reason that I labeled it a preliminary injunction is because the Court had contacted, had written to us and said, this should be considered a preliminary injunction. Has the Court ever said this is a preliminary injunction? The Court, I'm not talking about some staff person or some document. Because as I understand it, the only basis on which you contend there's appellate jurisdiction here is that this one-page document is an order denying a preliminary injunction. Is that right? No, Your Honor. Initially, when we filed our appeal, we thought it to be an injunction, not a preliminary injunction, a permanent injunction. It's very open-ended, and it's requiring the California Department of Corrections to act in a certain manner. We thought it to be an injunction. Whether it was someone in the staff or not, we did receive writing from the Court. From the Ninth Circuit you're talking about? Yes, Your Honor, from the Ninth Circuit, indicating that we should file it as a preliminary injunction. And then later on, we received indications from the Ninth Circuit that it should be considered an injunction. And so the only reason that we labeled it a preliminary injunction is because that's what we were told to do. What is it? From your – forget what labels the staffs have placed on it. I believe it. How do you characterize it? Let me ask you this, with that in mind, with that question, Mike. Who could be held in contempt at CDC if there was any failure to comply with this? Well, Your Honor, the way I read the order, it would be the Pleasant Valley State Prison, I believe it was directed to. Well, actually, it's – It says it's directed to some third person out there, wherever he might – he or she might be. It is ordered that be given access. That's correct. That's correct. Is there any doubt that you were not a party, or at least the Department was not a party to the original proceeding? There's no doubt that we were – we were never a party. Why would you intervene? Isn't the – if you're not a party and you think you're going to be adversely affected by a judgment, isn't – and you want to challenge it, if necessary, on appeal, why didn't you intervene in the case, at least seek to intervene in the case? Oh, Your Honor, I believe that that wouldn't have been necessary. In our papers, we cite to the case of Zenith indicating that our – that we needed to be served. We were never served. We were never noticed in any way, and that's one of the three points that I wanted to address. Well, that sounds to me as though you have no standing at all. If you were never served, if you were never given any notice, and you never sought to get into the case, how are you appealing it? I don't understand. Well, Your Honor, we always have the right to appeal an injunction, and this was an injunction directly related to my client. Injunction? No, I don't see this thing enjoining anyone. It just says that it is ordered that this plaintiff be given access to his legal files. Would the warden have been in contempt if they refused to allow him access to his typewriter? We felt that was the case, and later on, and this is not before the court, plaintiffs in that case brought a motion to – brought contempt proceedings against the warden and several other people who are employees of the California Department of Corrections. Well, who does this – That's something about the question of our jurisdiction. I notice here on page two of your brief what you say is this court has jurisdiction because preliminary injunctions are immediately appealable. It sounds to me as though you're invoking our jurisdiction solely on the ground that this is a preliminary injunction that is immediately appealable. It would be immediately appealable as a preliminary injunction. I do believe as a permanent injunction this court would also have jurisdiction over the matter. I don't think that whether it's – You haven't – you haven't – you may be right on that, but it's as far as I can tell what you're invoking our jurisdiction under is the authority to review a preliminary injunction. And it seems to me if this is not a preliminary injunction, then I'll be quite candid to say I find it very hard to see how this is a preliminary injunction because it doesn't seem to me to enjoin anyone. But if it is not a preliminary injunction, I wonder whether we have any jurisdiction over this appeal at all. I do believe that it was in effect an injunction against the California Department of Corrections and Rehabilitation. It was an order by the lower court directing this particular – well, as the court noted, it doesn't direct – it doesn't say it's directing anyone, but the effect was it was served on my clients so that they would comply. That is, provide him with the typewriter and administrative segregation. And that would be an injunction. And we believe it to be a permanent injunction. And I do believe this Court would have jurisdiction over a permanent injunction as well. Counsel, I'm looking at this order, and it's dated August 16th, 2004. And, of course, the only defendants are Robert Defwag and the city, unless there's somebody under et al. that it might conceivably include some sort of state party. To whom did this order run? Well, this order was – ultimately, it was served on, I believe, a subsequent prison that Mr. Donner had been transferred to. It was served by whom? By counsel for Mr. Donner. All right. But there's no doubt that the state was not a party in any sense to this order, and there's nothing directing the state to do anything in this order. Well, I was present when this order – even though we were not given notice, I was given – and I'm not sure that this fact is before the Court, but I was given notice. I was told of the hearing by counsel for Mr. Defwag, the defendant. And I did appear, and I did file papers in front of the Court. So there was no doubt at that hearing, which is also part of the excerpts of record, the transfer to that hearing. The hearing prior to this order. Yes. The hearing that ultimately created this. And there was no question at that time that this was being directed at Pleasant Valley State Prison, one of the prisons of the California Department of Corrections Rehabilitation. But as I understand, he is now no longer in state custody. Is that right? That's correct, Your Honor. Not correct? He is in custody? He is not in the custody. He – well, he is in the custody of the California Department of Corrections, but he's physically at the Metropolitan Detention Center, which is a Federal detention facility. In your view, does this order now run against the Federal people in whose custody he is detained? Your Honor, as the Court has noted, it is very open-ended. I would imagine that this order could be directed towards them as well. And the reason that we don't feel it was moot, because there was an argument made that this issue is moot, is because Mr. Donner continues to try to enforce this order against the California Department of Corrections. When this particular case, Donner v. Dedwick, is done, he will be once again in our custody, and it's quite possible that he will continue to use this open-ended order to receive items that, for security reasons, we wouldn't allow, for example, his typewriter. Well, let me ask you something. Do you make any attempts to tell the Federal authorities in whose control he now is how to handle him? I mean, do you? Does the State tell the Federal authorities don't allow him access to his typewriter? No, Your Honor, we do not. I assume that it's up to the Federal authorities if they want to allow him access to his typewriter. It's up to them. Yes, Your Honor, that would be correct. And the only reason he didn't have access to his typewriter at that particular time is because he was in administrative segregation. And once this case ends, he will once again be in our custody, and he actually received a SHU term. A SHU is Special Housing Unit term. He was found guilty of an assault on an officer. So he will have to, when he comes back, he will again be put in an area where he would not have access to a typewriter. Are the plans to return him to control of the State authorities, or is he going to serve out his sentence in Federal confinement? We know. Don't we know? Yes, well, to answer it this way, yes, we know. And he will be returned to the State custody where he will continue to serve out the remainder of a SHU term. Why is he in Federal custody again? That occurred as part of an agreement between myself and counsel for Mr. Donner. There was a lot of – subsequent to this order, there was a lot of other modifying orders gaining more time. And so to alleviate those problems, it was agreed that he would, during the remainder of this case, be in Federal custody. Like a writ of a testificandum, right? I believe it's writ of habeas corpus testificandum. Yes, testificandum. Yes, Your Honor. His presence is needed in the Federal court to litigate this Federal case. Counsel. Yes, Your Honor. Well, you suggest that this is really a preliminary injunction. Don't preliminary injunctions expire within 90 days? Your Honor, I agree with the Court that this is a permanent injunction. The Court just asked a question. Well, to answer your question, Your Honor, I don't believe it to be a preliminary injunction. I know that I labeled it that, but that was because that's what I was directed to do, and I followed the directions. Well, whether you believe it or not, you've characterized it, at least in your brief, the caption, the cover of your brief, after listening, it says, after showing appeal from the decision of the district, it says, preliminary injunction appeal, appellant's opening brief. Yes, Your Honor. It describes it as a preliminary injunction. What is your answer to Judge O'Scallion's question, doesn't a preliminary injunction expire in 90 days? And if it does, then it seems to me the thing is moved. Well, I — Unless you tell us it doesn't expire and a preliminary injunction doesn't expire in 90 days. I don't myself know whether it does or doesn't. A preliminary injunction, in my understanding, would expire in 90 days. But, again, I was directed, whether it was a staff member or not, from the Ninth Circuit to label it as such. And then, subsequent to that, and before oral argument was granted, the Court, again, gave notice. And I don't know — well, it wouldn't be part of the record that I put together. But we were told this is not a preliminary injunction. It should be considered a permanent injunction. And I do agree with the Court. So by whom? The Ninth Circuit. The clerk's office? The clerk's office, Your Honor, the Ninth Circuit. Probably the staff attorneys. Staff attorneys in the clerk's office up in San Francisco. That would be correct. And so I — Well, you wouldn't have any objections if we said that this injunctive order has expired and, therefore, the case is moot. Well, I would in the fact that now I have this open-ended order. Your Honor, we said it expired. It is no longer of any effect. In existence. It has no effect. No, I would not. I would not. If the Court was to say that this was a preliminary injunction and, therefore, the time has expired and this order is no longer in effect, I would not have a problem. The case is moot. We lack jurisdiction to smooth. I would have no problem with that. But I gather you don't want to take the risk yourself of just saying this order obviously doesn't run to us. The fact we were served doesn't mean anything. We're going to ignore it. You don't want to do that. No, Your Honor. I would not ever want to have a lower court out there with an order that I've ignored. I would always. Even though it doesn't have the name of the State on it. Your Honor, I understand that. I wouldn't take that risk. Okay. We understand your position. Why don't you reserve the remaining of your time and we'll hear from the other side? Unless you want to add something. No, Your Honor. I never did get to the three points, but they're in the papers and I'll reserve my time. We'll hear what counsel is. Yes. Good morning. My name is Robert Young and I'm appearing here on behalf of the appellee. What kind of an animal do we have here? Mr. Well, I think the papers make clear that the so-called incident, the so-called assault on a peace officer was really just a touching. When the when the peace officer was was actually risking Mr. Donor down and she grabbed his medicine bag, which is an Indian artifact, and she's not allowed to do that. And he instinctively touched her hand and then he immediately pulled back and apologized. I don't have to do it. It doesn't. My question is the order. Oh, I'm sorry. I thought you meant. I'm sorry. I misunderstood. The order that we have before us, the one that's dated August 16th or 17th when it was docketed, which reads Donor versus Defragan in the city of Los Angeles and does not mention the state in any way. I don't believe that's a preliminary injunction. I just believe it is. What is it? I believe it's a court order. It's an order issued by the district court, a trial court done for the purposes of ensuring the the orderly process of the proceedings in the case, because Mr. Donor would be unable to to prepare for trial if he were deprived, as he was, of attorney. That would probably run to Mr. Defragan. It would probably run to the city of Los Angeles. Does it run to the state of California? Well, I think it runs to the prison officials who were denying Mr. Donor these rights. Well, why weren't they named? As defendants? Yeah. Because this lawsuit had nothing to do with them. This lawsuit had only to do with Mr. Depley and the city of Los Angeles for their actions against Mr. Donor having nothing to do with what we're talking about here today. That's the underlying action. How can an order be effective against someone who is not named in it? Well, I think that if — possibly not, but, I mean, Judge Hatter felt that it would be, and we did serve it on the prisons. Do you think you could hold the prison officials in contempt of court by not complying with this order? It's possibly — it's possibly couldn't, but subsequent orders after this — Well, I'm not talking about — Okay. I'm talking about this order, because this is what's been appealed. Right. It's possible that they may not be able to be held to contempt on this. It's quite possible. But you said it runs against the prison officials, correct? If it has any effect, yes. It is an order. It's been given, and it is ordered. It is ordered. That is true. So I gather if the prison official there at Valley State Prison, somebody who's in charge, said, you're not getting this typewriter, you could go into court and hold them in — try to hold them in contempt, correct? I could try to do that. And the argument might be that they're not parties and they're not subject to this. That's quite possible, too. Suppose the warden of the federal institution where he is now physically refused to give him access to his typewriter. Could you then say that the federal official is in contempt of this order and go into the district court and seek to have him held in contempt? No, because I think this order was not directed at federal officials. In fact, I think this whole thing became — In terms it isn't directed to anyone. I mean, normally a preliminary injunction would say the defendant is hereby preliminary enjoined from any picketing within 200 feet of the main entrance to the store, et cetera, et cetera. I mean, normally that's what an injunction is. This looks like just an order, like a routine order entered in a litigation. You know, suppose an order saying that all — court enters an order saying that all discovery in this case shall be completed by December 1. Certainly that's not a preliminary injunction, although one could say, well, what the court has ordered is order the parties to complete discovery by December 1. And if they haven't done it, they're in contempt of the order. But that's not what we normally think of as a preliminary injunction, is it? Absolutely not. I don't think of this as a — I think this order is more akin to what you just described, more of an order issued by the judge to ensure the orderly process of the proceedings in the case. And that's how we always felt it was. If somebody violated that order, they could be held in contempt of court, the way you just phrased it. Okay. I mean, if an attorney doesn't comply with a court order regarding discovery, I don't remember in my own experience that an attorney would be held in contempt of court for not doing that. They're sanctioned. A party could be held in contempt. Sometimes they're sanctioned, but I don't recall them ever being held in contempt for violating a discovery order, at least not in State court where I've practiced. We're here in Federal court now. Now we're in Federal court right now, but in State court, which is — well, this is Federal court. Okay. I don't know. Maybe they could. I don't think — they might be able to, but in this case, I thought — Is there a live controversy going on now? I mean, is this still — I mean, assuming, just for the sake of argument, that this is an order directed against the custodian of this prisoner, no matter who it is. Is that — is this still a live issue? Is there a problem here today? No. We believe it's moot. We believe that once Mr. Donner was transferred to Federal custody, that, in fact, this order became moot, and that — and, in fact, if he — this order, if it had any life at all, it lives only through the duration of this case, and once the case is over and transferred back to State custody, it wouldn't have any effect because this order pertains only to this case. What are you asking us to do in this case? What remedy do you think we should impose here? I deny the appeal. It's plain moot and court-lacking jurisdiction. Say this — we should say this is moot? I believe the appeal is moot because — Well, then, if it's moot, does that mean we're supposed to vacate the order of the district court? Normally, when a case becomes moot on appeal, the appropriate procedure is to send it back with instructions to vacate the judgment. Is that what we should do here? I think — no, I think the thing you should do is — is — is — is not — is to deny the — deny the appeal, I guess, on the basis of jurisdiction, lack of jurisdiction, because it's not a — it's not an injunction, not a preliminary injunction. Do you envisage, then, that that August 04 order, then, is of no further effect? In other words, you couldn't use it when he goes back to State prison? That's my understanding. It only had to do with this case. He won't go back to State prison until the case is over. Once the case is over, there's no need for the order. Now, when you say the case is over, which case are we talking about? Denver v. Devway. Federal case. That case. The reason he's down here and the reason we got these orders, this and later orders, was because we needed to prepare the case for trial. And the judge wanted to help us do that. And — Now, you say prepare the case for trial. Right. What's the status of any trial? Is there any trial scheduled? There's been a — there's been a trial scheduled, I think it's in April of next year, in this case. And that trial will be focused on what? On the issues between Mr. Donah and Mr. Depwick. I don't think you want me to go into the details of that case. No, just — that trial will be on the merits of his — what, this is a 1983 claim? Yeah, Mr. Donah's claim against the city of L.A. and Mr. Depwick. Was that related to cutting his hair? Or was that something else? That's really a different issue. That's totally different. In any event — No, there's another case in Fresno that deals with that issue. But in any event, so far as the case of Donah v. Depwick is concerned, that's being set for trial in April. That's my understanding. All right. And — Okay. Okay. I really don't have any more questions. Thank you, Your Honor. I appreciate so much, Your Honor. Thank you. Thank you very much. Mr. Bazan, do you want to add anything? You have some time, if you like. Yes, Your Honor. I have four minutes. Six minutes. Six minutes and six seconds. Yes, Your Honor. You're looking at your watch. What you need to do is look at the clock that's counting down. Do you see that? Yes, Your Honor. That tells you the number of minutes you have left. Thank you, Your Honor. Okay. I'd first like to address a few things that were said with regard to the questioning on whether the issue is still live. As I stated, there was an attempt already once for contempt proceedings regarding this order. And when he comes back to our custody, he is going back — Mr. Donner is going back to the shoe, where he will not be able to get a typewriter, where he will not have face-to-face contact with his client. Mr. Young doesn't seem to be worried about that. He has no intention of reusing this order in any way against you, according to what he tells us. I understand, Your Honor. I'm skeptical for a number of reasons, namely the papers that I've read over the last year. I have — in my — well, regardless of my thoughts, he has demonstrated — his client, Mr. Donner, has demonstrated he intends on using this order. So I think that that makes the issue still live. The next thing is with regards to the merits of the injunction itself. And in my briefing, I cited to the cases where the elements are, one of them being irreparable harm. And what is being said, but — actually, what's not been said here today is that his basis for the irreparable harm is access to the courts. And I would like to point out factually that he does have an attorney, so he's not being affected by access to the courts in that manner. He — most of the things that he asked for, he did, in fact, have. And those things that he didn't have, there were security reasons for the rationale why he couldn't have them. So there was no irreparable harm. There was no lack of access to the courts. This was — the Dedwick case, if you look at it, is not the type of case where the United States Supreme Court has indicated we need to give him access to the courts. This is not having anything to do with his conditions of confinement. It has nothing to do with his sentencing. He has an attorney. Well, you say it has nothing to do with the conditions of confinement. Why not? If they won't allow him access to his typewriter, they won't allow him to have communications with his attorney, confidential communications. Why isn't that? Doesn't that relate to the conditions of confinement? I was referring to the underlying case, which is when the United States Supreme Court addresses the need for access to the courts. That's what they were addressing. This is not a type of case where there's an issue of access to the courts. That was the point that I wanted to make with regards to that. But beyond that, we've labeled it a preliminary injunction. It's clearly an injunction of some sort. We weren't — we were not party to the case. There was no personal jurisdiction. The Prison Litigation Reform Act, as I state in my papers, requires you to exhaust administrative remedies. If you do bring a conditions of confinement issue, that wasn't done here, and the elements of irreparable harm are missing here. And if this order does have any effect to this date, it should be reversed. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Friedman, O'scannlain, Paez